UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| JEFFREY N., <br><br> Petitioner, <br><br> vs. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Respondent, | Case No.: 1:19-cv-00433-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Jeffrey N.'s Petition for Review (Dkt. 1), appealing the Social Security Administration's denial of his application for Title II benefits. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

I. **ADMINISTRATIVE PROCEEDINGS**

On July 12, 2016, Petitioner protectively filed an application for Title II benefits for a period of disability beginning March 5, 2014. This application was initially denied on January 22, 2016 and, again, on reconsideration on March 8, 2017. On May 17, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On May 16, 2018, ALJ Stephen Marchioro held a hearing in Boise, Idaho, at which Petitioner, represented by attorney Jacob Bernhardt, appeared and testified. Sara Statz, an impartial vocational expert, also appeared and testified at the same hearing.

On October 24, 2018, the ALJ issued a decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council.  On April 27, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed this case.  He raises five points of error:  (i) the ALJ erred in determining that Petitioner's visual impairments were not a severe medically determinable impairment; (ii) the ALJ erred in not finding that Petitioner's migraine headaches equaled a listed impairment; (iii) the ALJ improperly evaluated the medical opinions; (iv) the ALJ failed to provide sufficient justification for discrediting Petitioner's symptom testimony; and (v) the ALJ's residual functional capacity determination was not supported by substantial evidence.  Pet.'s Brief at 5-20 (Dkt. 17).  Petitioner requests that the Court either reverse the ALJ's decision and find that he is entitled to benefits or, alternatively, remand the case for further proceedings and award attorneys' fees.  *Id*. at 20.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012).  The standard requires more than a scintilla but less than a preponderance.  *Trevizo*, 871 F.3d at 674.  It "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

**MEMORANDUM DECISION AND ORDER - 2**

With respect to questions of fact, the Court is to review the record as a whole to decide whether it contains evidence that would allow a person of a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight is given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, this Court "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

**A.      Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial

**MEMORANDUM DECISION AND ORDER - 3**

work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied regardless of their medical condition, age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant has not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in SGA during the period from March 5, 2014 (the alleged onset date) through December 31, 2016 (the date last insured).  AR 18.

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's physical or mental ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1522, 416.922.  If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the ALJ found that Petitioner has the following severe medically determinable impairments:  migraine headaches, chronic obstructive pulmonary disorder, bullous emphysema status post-surgery, degenerative disc disease of the cervical and lumbar spine, left ankle dysfunction status post-left Achilles tendon repair surgery, and left shoulder dysfunction status post-surgical repair.  AR 18

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 4**

Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ concluded that Petitioner's above-listed medically determinable impairments, while severe, do not meet or medically equal, either individually or in combination, the criteria established for any of the qualifying impairments. AR 21.

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from their impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established, if the work lasted long enough for the claimant to learn to do the job and be engaged in SGA. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except that he can only occasionally push, pull or reach overhead with his bilateral upper extremities. He can only occasionally operate foot controls with his left, lower extremity. He can occasionally balance, stoop, kneel, crouch, crawl and climb ramps or stairs, but can never climb ladders, ropes or scaffolds. He is limited to working in an environment that has no more than moderate noise as defined by the Selected Characteristics of Occupations (SCO). He can only occasionally be exposed to irritants such as odors, fumes, dusts and gasses. He must avoid all exposure to vibrations, poorly ventilated areas, flashing or strobe lights or working in direct sunlight. He must be able to don and wear a hat with a bill and wear prescription sunglasses as needed while working.

AR 23.

**MEMORANDUM DECISION AND ORDER - 5**

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of their impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).  If the claimant can do such other work, they are not disabled; if the claimant cannot do other work and meets the duration requirement, they are disabled.  Here, the ALJ found that through the date last insured, Petitioner was not capable of performing his past relevant work (electrician/electrician supervisor), but that he was capable of working full-time as a document preparer, addresser, and election clerk.  AR 33-34.  Based on these findings, the ALJ concluded that Petitioner was not disabled.  AR 34.

**B.    Analysis**

    1.    <u>The ALJ Properly Considered Petitioner's Visual Impairments at the Second Step of the Sequential Process</u>

Petitioner argues that the ALJ erred when he determined that certain of Petitioner's visual impairments were not a severe medically determinable impairment at step two.  Pet.'s Brief at 6-8 (Dkt. 17); *but see* AR 18-19 (as to his ocular-related impairments, ALJ finding that Petitioner's blepharitis of the upper eyelids, bilateral dry eye syndrome, and cataracts to be "non-severe").  Specifically, Petitioner seems to contend that the visual limitations resulting from his historical retinal detachments should have been assessed as "severe" at step two because they contributed to his migraine headaches and impeded his ability to work.  Pet.'s Brief at 6-8 (Dkt. 17).

At step two, a claimant must make a threshold showing that his medically determinable impairments significantly limit his ability to perform basic work activities, the so-called "severity limitation."  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R.

**MEMORANDUM DECISION AND ORDER - 6**

§§ 404.1520(c), 416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs," including:  (i) physical functions such as walking, standing, sitting, lifting, and carrying; (ii) capacities for seeing, hearing, and speaking; (iii) understanding, carrying out, and remembering simple instructions; (iv) use of judgment; (v) responding appropriately to supervision, co-workers, and usual work situations; and (vi) dealing with changes in a routine work-setting.  20 C.F.R. §§ 404.1521(b), 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the valuation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Bowen*, 482 U.S. at 153.  But as importantly, the regulation must not be used to prematurely disqualify a claimant.  *Id*. at 158 (O'Connor, J., concurring).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  "It is not meant to identify the impairments that should be taken into account when determining the RFC."  *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017).  A mere diagnosis is insufficient to establish a severe impairment; instead, a claimant must *show* that his medically determinable impairments *are* severe.  20 C.F.R. § 416.921.

Here, substantial evidence supports the ALJ's rationale that Petitioner's visual impairments do not rise to the requisite level of severity.  To begin, it is true that the September 29, 2014 "Neuro-Optometric Assessment" from Dr. Ryan Johnson that Petitioner refers to in setting the stage for his argument highlights a number of "visual conditions" that Petitioner experiences.  AR 687-89.  However, these are the product of incidents that took place well before Petitioner's alleged March 5, 2014 onset date and therefore reflect "longstanding" symptoms that predated the same.  *Id*. (referencing "multiple concussions throughout his

**MEMORANDUM DECISION AND ORDER - 7**

history," "multiple retinal detachments," "the right eye repaired with a scleral buckle in 2001," "the left eye repaired with pneumatic retinopexy in 2011," and "bilateral cataract extraction in 2011"). In other words, whatever symptoms Petitioner experienced as of the date of Dr. Johnson's assessment never precluded him from previously working full-time and therefore cannot be considered severe.[1] This is especially the case when, according to Dr. Johnson, "[Petitioner] is able to achieve 20/20 with each eye when corrected with glasses." AR 688. Regardless, the "primary goal" of Dr. Johnson's assessment was to "identify and treat any visual component of [Petitioner's] headaches and asthenopic complaints." *Id*. It is undisputed that the ALJ considered Petitioner's migraine headaches to be a severe medically determinable impairment at step two and accounted for their (and their component parts') corresponding limitations at step four (RFC analysis). AR 23-32 (ALJ addressing Petitioner's claim that "he stopped working due to migraine headaches and an inability to see" and that "his headaches are brought on by reading, using a computer, watching television, and exposure to bright lights").

But even if the ALJ should have included Petitioner's visual conditions as a severe impairment at step two, that error is harmless because the ALJ resolved step two in Petitioner's favor and continued with the sequential evaluation process. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). In *Lewis*, the ALJ did not count the claimant's bursitis as a severe impairment at step two but considered the limitations imposed by bursitis for the RFC analysis at step four. *Id*. The court found this analysis to be sufficient under the substantial evidence standard and stated that if there was any error, that error would be harmless. *Id*.; *see also Buck*, 869 F.3d at 1048-49

---

[1] This applies equally to Petitioner's claim that, on September 14, 2015, Dr. Johnson noted that Petitioner's "level of vision dysfunction will limit the visual activities [Petitioner] is able to complete during a typical 8-hour day (especially near/computer)." AR 530. It is unclear how (or even whether) such dysfunction *significantly limits* Petitioner's ability to perform basic work activities – the necessary inquiry at step two. *Supra*. Moreover, it is worth mentioning that Petitioner's subsequent visits related to complaints of dry/irritated eyes. AR 511-26

**MEMORANDUM DECISION AND ORDER - 8**

(an ALJ's failure to list a particular impairment as severe at step two is harmless error, assuming the ALJ considers the limitations caused by all medical determinable impairments in assessing the claimant's RFC). Similarly, here, the ALJ found that Petitioner's migraine headaches were severe at step two and considered all of Petitioner's impairments (whether severe or non-severe) when evaluating his RFC at step four. AR 21, 23, 29. Thus, any categorization of Petitioner's visual limitations/conditions as non-severe at step two is largely inconsequential because the ALJ necessarily considered the limiting effects of these impairments in conjunction with Petitioner's other related impairments in determining his RFC. In short, any error by the ALJ at step two would have been harmless.

Reversal is not warranted on this issue.

2. <u>The ALJ Erred in Evaluating Petitioner's Migraine Headaches at Step Three of the Sequential Process</u>

Petitioner argues that the ALJ erred at step three when he "failed to consider" whether Petitioner's migraine headaches equaled Listing 11.02. Pet.'s Brief at 8 (Dkt. 17). At the outset, the ALJ *did* consider Petitioner's migraine headaches against Listing 11.02 (Epilepsy), along with Listings 11.14 (Peripheral Neuropathy), and 11.08 (Spinal Cord Disorders). He just determined that they do not meet any of these Listings. AR 21-22. Petitioner's criticism of the ALJ's decision is therefore considered in this more complete context.

At step three, an ALJ must evaluate a claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three [of the sequential process], and the ALJ need not make any specific finding as to his or her ability to perform past

**MEMORANDUM DECISION AND ORDER - 9**

relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings at least equal in severity and duration to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment most like the claimant's impairment." *Tackett*, 180 F.3d at 1099 (internal quotations omitted, emphasis removed); *see also* 20 C.F.R. § 404.1526.

Notably, migraine headaches are not a specifically-listed impairment. If an impairment is not described in the "Listing of Impairments," the regulations require that the ALJ "compare [a claimant's] findings with those for closely analogous listed impairments." 20 C.F.R. § 416.926(b)(2). The Social Security Administration identifies Listing 11.02 (Epilepsy) as the most closely analogous to primary headache disorders. Migraine headaches are included in such disorders and may, alone or in combination with another impairment, medically equal a recognized Listing. SSR 19-4p: *Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders*, available at 2019 WL 4169635 (Aug. 26, 2019); *see also Woolf v. Saul*, 2019 WL 4580037, at *5 (D. Idaho 2019) (citing *Rader v. Comm'r of Soc. Sec.*, 2018 WL 4087988, at *3-4 (D. Idaho 2018)) ("Thus, the SSA provides specific guidance regarding the applicability of Listing 11.02 to the step three medical equivalence analysis for migraine headaches. Given this, it is no surprise that an ALJ's failure to specifically consider Listing 11.02 constitutes legal error when a claimant's migraine headaches were found to be a severe impairment at step two.") (citations omitted).

A claimant bears the burden of producing evidence that establishes all of the requisite medical findings that his impairments meet or equal a particular Listing. *Bowen*, 482 U.S. at 146 n.5. If the claimant is alleging equivalency to a Listing, he must proffer a theory, plausible or otherwise, as to how his combined impairments equal a Listing. *Lewis*, 236 F.3d at 514. Though

**MEMORANDUM DECISION AND ORDER - 10**

it is a claimant's burden to establish, "[a]n ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis*, 236 F.3d at 512. However, the ALJ is not required to state why a claimant fails to satisfy every criteria of the Listing if the ALJ adequately summarizes and evaluates the evidence. *Id*.

Petitioner contends that he equals Listing 11.02D. Pet.'s Brief at 9 (Dkt. 17). There is no dispute that the ALJ considered Petitioner's migraine headaches alongside Listing 11.02D (and others). AR 21-22. The appropriate question, however, is whether the ALJ sufficiently did so. The Court finds that he did not.

Listing 11.02D requires the existence of "dyscognitive seizures, occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment," and a "marked limitation" in one of the following: (i) physical functioning; (ii) understanding, remembering, or applying information; (iii) interacting with others; (iv) concentrating, persisting, or maintaining pace; or (v) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 11.02D. Here, the ALJ determined that Petitioner failed to meet Listing 11.02D because he simply does not suffer from dyscognitive seizures. AR 22 ("Additionally, the evidence does not meet or equal Listing 11.02D because there is no evidence that claimant has had any type of documented seizures. . . . [T[he evidence fails to meet this Listing as there is no evidence that the claimant has had dyscognitive seizures."). But this conclusion is too formulaic and misses the point.

Petitioner is not claiming that he is disabled due to epilepsy. Therefore it should come as no surprise that he does not suffer from dyscognitive seizures. Instead, this situation (where migraine headaches are not a specifically-listed impairment) requires that the ALJ assess whether Petitioner's migraine headaches are equal in severity and duration to the criteria in Listing

**MEMORANDUM DECISION AND ORDER - 11**

11.02D – not that they are one and the same.  On that score, the Social Security Administration's policy interpretation SSR 19-4p provides ALJs with the necessary instruction:

> Paragraph D of Listing 11.02 requires dyscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning.  *To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B* and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in:  physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself.
>
> . . . .
>
> Paragraph B of Listing 11.02 requires dyscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment.  *To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider:  a detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations)* . . . .

SSR 19-4p, available at 2019 WL 4169635, at *7 (emphasis added); *see also Rader*, 2018 WL 4087988, at *6 ("Notably, Listing 11.02 does not require objective findings of neurological or physical abnormality.  Boiled down, Listing 11.02 requires three main elements:  (i) a detailed documentation of pain and resultant symptoms; (ii) occurrence of the impairment at least twice a week during a period of three consecutive months of prescribed treatment; and (iii) that the impairment significantly alters a claimant's awareness of daily activity.").

The ALJ's analysis of Listing 11.02D's application to Petitioner's migraine headaches at step three begins and ends with whether Petitioner experiences dyscognitive seizures.  This is a

**MEMORANDUM DECISION AND ORDER - 12**

misguided approach in this setting. Otherwise, migraine headaches *themselves* would never meet or equal a listed impairment. The ALJ should have more fully examined Petitioner's history of migraine headaches, including duration, frequency, treatment and any side-effects, and resulting limitations. *Supra*.

For his part, Petitioner points to the existence of such evidence via his treating neurologist, Dr. Ryan Smith. Pet.'s Brief at 10-12 (Dkt. 17) (citing AR 766, 768, 775, 779, 787, 790-91, 793, 840). That the ALJ later rejected Dr. Smith's opinions in favor of Dr. Tonya Fuller's opinions[2] fails to take into account the actual scope and limitations of Dr. Fuller's opinions. AR 32. Dr. Fuller evaluated Petitioner impairments, including migraine headaches, *only* under Listings 11.08 and 11.14, *not* Listing 11.02D. AR 22 (citing AR 945-46 (Dr. Fuller stating: "The claimant was considered for disability under adult neurological listings 11.08 and 11.14. He does not meet criteria required by *these listings* . . . ." (emphasis added))).

Perhaps this is a technical distinction without a true legal difference. But where migraine headaches are to be measured against Listing 11.02 specifically, the absence of such scrutiny is critical. At bottom, it cannot be said that no reasonable administrative factfinder, following the *correct analysis*, could have resolved the matter differently. That is, on this record, the Court cannot say that any error in this respect was harmless. *Cf. Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012 ("[A]n ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination.").

Remand is warranted on this issue.

3. The ALJ Improperly Evaluated the Medical Opinions

---

[2] Following the hearing, the ALJ submitted "Medical Interrogatories" to independent medical expert Dr. Fuller, a board-certified neurologist. AR 15. In doing so, the ALJ requested that Dr. Fuller "review the claimant's medical records and hearing testimony and issue an opinion regarding his migraine headaches." AR 22.

**MEMORANDUM DECISION AND ORDER - 13**

Petitioner argues that the ALJ erred when weighing certain medical opinions, in particular, giving greater weight to Dr. Fuller's opinions than to Dr. Smith's opinions. Pet.'s Brief at 16-18 (Dkt. 17). Respondent disagrees, asserting that the ALJ appropriately considered the medical opinion evidence. Respt.'s Brief at 5-6 (Dkt. 18).

The ALJ is responsible for resolving ambiguities and conflicts in the medical record. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The applicable rules distinguish among medical opinions based on whether the physician providing the opinion (i) treated the claimant (a treating physician), (ii) examined but did not treat the claimant (an examining physician), or (iii) neither examined nor treated the claimant (a non-examining or reviewing physician). *Garrison*, 759 F.3d at 1012. In general, opinions of treating physicians are given more weight than opinions of examining physicians, and opinions of examining physicians are afforded more weight than opinions of reviewing physicians. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014). The ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Here, the ALJ gave "little weight" to Dr. Smith's general statements on the ultimate issue of disability (and those statements' references to World Health Organization findings). AR 32. In doing so, however, the ALJ did not address Dr. Smith's actual treatment notes wherein he discusses the "nuts and bolts" of Petitioner's condition. Instead, the ALJ simply found Dr. Fuller's "assessment . . . far more persuasive." AR 32. Whatever that exactly means, the fact that Dr. Fuller may have disagreed with Dr. Smith, without more, is not enough to set aside Dr. Smith's findings and opinions, keeping in mind that Dr. Smith is Petitioner's treating neurologist, whereas Dr. Fuller is merely a non-examining/reviewing physician. *See, e.g.*, *Lester*

**MEMORANDUM DECISION AND ORDER - 14**

*v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995) ("The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."). Separately, it is unclear whether Dr. Fuller even disagreed with Dr. Smith because Dr. Fuller (i) only assessed limitations or restrictions corresponding to Petitioner's cervical and lumbar spine issues, not the limitations that Petitioner's migraine headaches warrant; and (ii) did not explore whether Petitioner's migraine headaches meet or equal Listing 11.02D.  AR 945-46; *see also supra*.

It is axiomatic that the Court does not resolve conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations.  Rather, the Court decides whether there is support in the record for the ALJ's decision that Petitioner is not disabled.  Here, to the extent the record shows that the opinions of Drs. Smith and Fuller conflict, the Court is unable to conclude whether the ALJ's decision to discount Dr. Smith's opinions is supported by substantial evidence (either clear and convincing or specific and legitimate).

Remand is warranted on this issue as well.

4.     <u>Petitioner's Credibility</u>

As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight.  *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990); *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities).  In evaluating a claimant's credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including consideration of (i) claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct; as well as (ii) claimant's daily activities, claimant's work record, and testimony from

**MEMORANDUM DECISION AND ORDER - 15**

physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider location, duration, and frequency of symptoms; factors that precipitate and aggravate those symptoms; amount and side effects of medications; and treatment measures taken by claimant to alleviate those symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186 (July 2, 1996). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).

In rejecting a claimant's testimony, the ALJ must make specific findings stating clear and convincing reasons for doing so. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). As described *supra*, the ALJ erred in his assessment of certain medical opinions. Hence, the Court will not address issues surrounding Petitioner credibility in any great depth, considering that the ALJ's credibility determination is necessarily tethered to the medical record. Suffice it to say, for the reasons described in this decision, the evidentiary landscape for questioning Petitioner's credibility has changed.

Remand is warranted on this issue as well.

5. Petitioner's RFC

The ALJ determined that Petitioner retains the RFC to perform sedentary work with certain limitations. AR 23. Petitioner argues that the ALJ erred at step 5 when he failed to include all of Petitioner's functional limitations in the RFC. Pet.'s Brief at 18-20 (Dkt. 17). Because the Court remands the ALJ's findings for other reasons – namely, whether Petitioner's migraine headaches meet a listed impairment, the weighing of medical opinions, and Petitioner's credibility – the ALJ should again consider the effects of Petitioner's impairments on remand and discuss their impact, along with a renewed assessment of the medical opinions and Petitioner's credibility, on Petitioner's RFC. So, while not specifically remanding the issue of

**MEMORANDUM DECISION AND ORDER - 16**

Petitioner's RFC based on the argument Petitioner raises here, the practical effect of remanding other issues may ultimately affect Petitioner's RFC on remand.

Remand is warranted on this issue as well.

## IV. **CONCLUSION**

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the court may not substitute its own interpretation for that of the ALJ. *See Key*, 754 F.2d at 1549. In this case, however, there was not a proper consideration by the ALJ of Petitioner's migraine headaches. Additionally, the reasons given by the ALJ for rejecting certain medical opinions are not properly supported, potentially affecting the ALJ's credibility determination, and RFC. This case is therefore remanded for reconsideration for the reasons described in this decision.

## V. **ORDER**

Based on the foregoing, Petitioner's request for review is GRANTED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.



DATED:  September 30, 2021

_____
Honorable Raymond E. Patricco
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**